KAREN P. HEWITT
United States Attorney
NICOLE ACTON JONES
Assistant U.S. Attorney
California State Bar No. 231929
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5482
E-mail: nicole.jones@usdoj.gov

Attorneys for Plaintiff
United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Case No. 07CR2872-JM |
| Plaintiff, ) ) | |
| v. ) ) | **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:** |
| JUAN HERON-SALINAS, ) ) | **(1) PRESERVE EVIDENCE AND TO COMPEL DISCOVERY;** |
| Defendant. ) ) | **(2) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION;** |
| ) | **(3) FOR LEAVE TO FILE FURTHER MOTIONS** |
| ) | **TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES** |
| ) | Date:   November 30, 2007 |
| ) | Time:   11:00 a.m. |
| ) | Court:  The Hon. Jeffrey T. Miller |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Nicole Acton Jones, Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's Motion To Preserve Evidence and Compel Discovery, Dismiss the Indictment Due to Improper Grand Jury Instruction and For Leave to File Further Motions in the above-referenced case. Said motions are based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

//

//

# I

## STATEMENT OF THE CASE

On October 17, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging defendant Raul Mendez-Vargas ("Defendant") with Attempted Entry After Deportation, in violation of Title 8, United States Code, Section 1326. On October 30, 2007, Defendant was arraigned on the Indictment and entered a plea of not guilty.

# II

## STATEMENT OF FACTS

### A.   Defendant's Apprehension

On October 9, 2007, at about 6:30 a.m., Defendant attempted to enter the United States from Mexico through the San Ysidro Port of Entry. Specifically, Defendant was found, along with three other people, concealed in the trunk of a 2001 Volkswagen Jetta. Defendant was escorted to secondary inspection.

In secondary, Defendant's biographical information and fingerprints were entered into the IAFIS and immigration computer databases, which revealed Defendant's criminal and immigration history. Defendant was then advised of his Miranda rights in the Spanish language. Defendant elected to invoke his right to remain silent. Defendant was also advised of his consular communication rights and he notified a consular officer of his arrest.

### B.   Defendant's Criminal and Immigration History

On January 18, 2000, Defendant was convicted in Los Angeles Superior Court of Assault with a Firearm on a Person in violation of California Penal Code § 245(a)(2). Defendant was sentenced to 72 months in custody.

On December 4, 2006, Defendant was convicted in this District of alien smuggling in violation of 8 U.S.C. § 1324. Defendant was sentenced to 18 months in custody

Defendant appeared before an Immigration Judge for a deportation hearing on December 30, 2004 and was physically removed from the United States to Mexico through the Calexico Port of Entry. Defendant was most recently physically removed to Mexico on October 1, 2007 through Pennsylvania following his release from Federal Correctional Institution Gilmer.

# III

# DEFENDANT'S MOTIONS

**A.     MOTION TO COMPEL DISCOVERY**

   **1.     Discovery in this Matter is Current**

The Government has and will continue to fully comply with its discovery obligations. To date, the Government has provided Defendant with 69 pages of discovery and one DVD. The Government has ordered Defendant's A-File, but because he was removed from the United States so recently and the removal was initiated in Pennsylvania, the file has not yet been received. The Government has also ordered the audiotape from Defendant's hearing before an Immigration Judge and will produce a copy as soon as the tape is received and a duplicate has been made. Furthermore, the Government will request that the arresting agency preserve any evidence the Government intends to introduce in its case-in-chief or that may be material to the defense. As of the date of this filing, the Government has received no reciprocal discovery.

   **2.     The Government Has and Will Continue to Comply With Its Discovery Obligations**

The Government recognizes and acknowledges its obligation pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. As set forth above, the Government has complied and will continue to comply with its discovery obligations going forward.

As to exculpatory information, the United States is aware of its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) and will comply. The United States will also produce any evidence of bias/motive or impeachment of any of its witnesses of which it becomes aware. An inquiry pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) will also be conducted.

The United States will provide a list of witnesses at the time the Government's Trial Memorandum is filed. The grand jury transcript of any person who will testify at trial will also be produced. The United States will produce any reports of experts that it intends to use in its case-in-chief at trial or such reports as may be material to the preparation of the defense.

The United States has provided information within its possession or control pertaining to the prior criminal history of Defendant. If the Government intends to offer any evidence under Rules 404(b) or 609 of the Federal Rules of Evidence, it will provide timely notice to Defendant.

To the extent Defendant requests specific documents or types of documents, the Government will continue to disclose any and all discovery required by the relevant discovery rules. Accordingly, the Government respectfully requests that no orders compelling specific discovery by the United States be made at this time.

**3.  The Government Objects to Requests for Discovery That Go Beyond Any Statutory or Constitutional Disclosure Provision.**

   *a.     TECS Records*

The Government objects to providing Defendant with crossing reports from the Treasury Enforcement Communications System ("TECS"). [Memorandum at 4.] TECS reports are not subject to Rule 16(c) because the reports are neither material to the preparation of the defense, nor intended for use by the Government as evidence during its case-in-chief. The TECS reports are not Brady material because the TECS reports do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If the Government intends to introduce TECS information at trial, discovery of the relevant TECS reports will be made at least by the time of the filing of its trial memorandum.

   *b.     Impeachment Evidence*

The Government recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling. The Government, however, strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, Brady, Giglio, Henthorn, or any other Constitutional or statutory disclosure provision. [Memorandum at 7.] Nor is Defendant entitled to evidence that a prospective witness has ever engaged in a criminal act or is under criminal investigation by federal, state, or local authorities. [Memorandum at 6.] The Government will, however, provide the conviction record, if any, which

could be used to impeach witnesses the United States intends to call in its case-in-chief. An inquiry pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) will also be conducted.

Defendant has also made several discovery requests related to purported "material witnesses." [Memorandum at 6, 7.] The Government did not retain any material witnesses in this case. Defendant was found in a trunk along with three other people. At this time, the Government has no intention of calling the driver or any of the other people in the trunk as witnesses in its case-in-chief; therefore, Defendant's request for impeachment information is moot. Defendant has not proffered any theory of how the prior record, the prior immigration contacts, or the A-files of any of these individuals could possibly be relevant to his defense or how such information could possibly be Brady material under the facts of this case. Defendant has cited no case law to support that such information is discoverable under any applicable rule or statute.

### c. Witness Lists

While the Government will supply a tentative witness list with its trial memorandum, it vigorously objects to providing home addresses. See United States v. Steele, 785 F.2d 743, 750 (9th Cir. 1986); United States v. Sukumolachan, 610 F.2d 685, 688 (9th Cir. 1980); United States v. Conder, 423 F.2d 904, 910 (9th Cir. 1970) (addressing defendant's request for the addresses of actual Government witnesses). The Government also objects to any request that the United States provide a list of every witness to the crimes charged who will not be called as a United States witness. [Memorandum at 7.] "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(c)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)).

### d. Grand Jury Transcripts

Defendant seeks production of the grand jury transcripts on the ground that the transcripts "may be relevant to any possible defense or contention that he might assert.." [Memorandum at 7.] The Government does not intend to introduce the testimony of a grand jury witness at trial, therefore, the transcripts are not discoverable as statements for purposes of the Jencks Act. Defendant seems to argue that the grand jury transcripts are relevant to his motion to dismiss the indictment. The facts of

this case, however, simply do not lend themselves to the possibility that the Government was aware of "substantial" exculpatory evidence but nevertheless failed to present that evidence to the grand jury. To support disclosure of the secret grand jury proceedings, Defendant must at least proffer the existence of potential exculpatory evidence that was withheld from the grand jury.

### e. *Personnel Records of Government Officers Involved in the Arrest*

The Government objects to Defendant's request that the Government reveal all citizen complaints, and internal affair inquiries into the inspectors, officers, and special agents who were involved in this case – regardless of whether the complaints or inquiries are baseless or material and regardless of whether the Government intends to call the inspectors, officers, and special agents to testify. [Memorandum at 9.] As previously noted, the Government will comply with Henthorn and disclose to Defendant all material incriminating information regarding the testifying Government inspectors, officers, and special agents.

## B. THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED
### 1. Introduction

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 11, 2007. Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed.

Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."). [Id.] Isgro reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." <u>Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct.</u> Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in <u>Williams</u>, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment. [Memorandum p. 25 ("A grand jury so badly misguided is no grand jury at all under the Fifth Amendment").] Concerning that kind of a contention <u>Isgro</u> stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).

The portions of the two relevant instructions approved in <u>Navarro-Vargas</u> were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'" 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments

from the parties. The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

**2.   The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**[1]

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

Partial Transcript pp. 8-9.[2]

---

[1] As this Court is aware, Federal Defenders of San Diego, Inc. has filed this same motion in almost every case indicted by the January 2007 grand jury. In United States v. Martinez-Covarrubias, 07CR0491-BTM, Judge Moskowitz recently issued a written opinion denying this same motion to dismiss the indictment. See Government's Exhibit 1. Judge Moskowitz found that the instructions given by Judge Burns regarding the role of the grand jury were not erroneous. Id. at 5-10.

[2] The Partial Transcript, which includes the instructions Judge Burns gave to the grand jury, is
(continued...)

1  Defendant acknowledges that in line with Navarro-Vargas, "Judge Burns instructed the grand
2  jurors that they were forbidden 'from judg[ing] the wisdom of the criminal laws enacted by
3  Congress; that is, whether or not there should be a federal law or should not be a federal law
4  designating certain activity [as] criminal is not up to you.'" [Memorandum p. 10.] In concocting his
5  theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant
6  the debate about what the word "should" means. [Memorandum p. 17.] Defendant contends, "the
7  instruction flatly bars the grand jury from declining to indict because they disagree with a proposed
8  prosecution." [Id. at 10.] Defendant further contends that Judge Burns reinforced this flat
9  prohibition when he "referred to an instance in the grand juror selection process in which he excused
10 three potential jurors." [Id.] This argument combines two of the holdings in Navarro-Vargas in the
11 hope they will blend into one. They do not.

12 Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom
13 of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by
14 Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an
15 expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in
16 grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his
17 rights, and within the law, when he excused the three prospective grand jurors because of their
18 expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind
19 the impaneled grand jurors that they could not question the wisdom of the laws. As we will
20 establish, this reminder did not pressure the grand jurors to give up their discretion not to return an
21 indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from
22 declining to indict because the grand jurors disagree with a proposed prosecution, because they do
23 not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the
24 prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the

25
26
27
28  [2/](...continued)
    attached to Defendant's motion as Exhibit A. The Supplemental Transcript, which includes the voir dire
    portion of the grand jury proceedings, is attached to Defendant's motion as Exhibit B.

term "should" was germane.[3/] 408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found"). This other instruction bestows discretion on the grand jury not to indict.[4/] In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they

---

[3/] That instruction is not at issue here. It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

[4/] The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment. 408 F.3d at 1206.

>committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
>To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told that they had the discretion not to return an indictment per Navarro-Vargas. If a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment by this Court exercising its supervisory powers.

Although Defendant argues that Judge Burns used the excusing of the prospective grand jurors as a method of coercing the impaneled grand jurors to return indictments "in each and every case where there is probable cause," [Memorandum p. 21], the Partial Transcript reveals that did not happen. When instructing the impaneled grand jurors Judge Burns said:

>You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
>But it is not for you to judge the wisdom of the criminal laws enacted by congress; that is whether or not there should be a federal law or should not be a federal law designating certain activity as criminal is not up to you.

[Partial Transcript, p. 8.] This passage simply does not evoke the "you must indict no matter what" scenario proposed by Defendant. Judge Burns was simply reminding the impaneled grand jurors of their obligation not to judge the wisdom of the criminal laws, which all the cases allow him to do. Further, a reading of the dialogues between Judge Burns and the three excused jurors found in the Supplemental Transcript [Defendant's Exhibit B] reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burn's reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]'--a dismissal is not warranted." Isgro, 974 F.2d at 1094.

### 3. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution[5]

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns stated:

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[6]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

---

[5] In his October 11, 2007 opinion, Judge Moskowitz found that Judge Burns' instruction to the grand jury regarding the duty to present exculpatory evidence did not constitute structural error so as to warrant dismissal of the indictment, but left open the possibility that this instruction, combined with other facts in a specific case, may warrant a dismissal under the court's supervisory powers. See Government's Ex. 1 at 10-12. The facts of this case, however, simply do not lend themselves to the possibility that the Government was aware of "substantial" exculpatory evidence but nevertheless failed to present that evidence to the grand jury. To support disclosure of the secret grand jury proceedings, Defendant must at least proffer the existence of potential exculpatory evidence.

[6] Just prior to this instruction, Judge Burns had informed the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

Commenting on the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," Defendant proposes that by making that statement, Judge Burns also "assure[d] the grand jurors that prosecutors would present to them evidence that tended to undercut probable cause." [Memorandum at 23.] Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" [Id. at 24.] From this lash-up Defendant contends that the instructions discourage investigation by creating a presumption that in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. [Id. at 25.] Defendant then concludes that "[a] grand jury so badly misguided is no grand jury at all under the Fifth Amendment. [Id.]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it." (emphasis added)). However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury. As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[7] Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

---

[7] The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html.

(Emphasis added.)[8] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233." (Emphasis added.)[9]

The facts that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory evidence exists.[10] If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant. There is nothing wrong in this scenario with a grand juror inferring that there is no

---

[8] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm.

[9] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E". See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

[10] Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

"substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy. Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case. The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent," which was also required by Navarro-Vargas. 408 F.3d at 1207. In this context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally defective requiring dismissal of this indictment or any indictment.

The "duty bound" statement constitutional contentions raised by Defendant do not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and

pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, or any other indictment, need not be dismissed.

**C.  MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

The United States does not object to the granting of leave to allow Defendant to file further motions, as long as the order applies equally to both parties and additional motions are based on newly discovered evidence or discovery provided by the United States subsequent to the instant motion at issue.

## IV
## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Defendant's motions be denied.

DATED:  November 21, 2007

                                                                    Respectfully Submitted,

                                                                    KAREN P. HEWITT
                                                                    United States Attorney


                                                                    /s/ *Nicole Acton Jones*
                                                                    NICOLE ACTON JONES
                                                                    Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR2872-JM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUAN HERON-SALINAS, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

IT IS HEREBY CERTIFIED THAT:

    I, NICOLE ACTON JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

    I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

    1. Jennifer Coon, Federal Defenders of San Diego, Inc.

    I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

    None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed on November 21, 2007.

                                                /s/ *Nicole Acton Jones*
                                                NICOLE ACTON JONES
                                                Assistant U.S. Attorney