1  **JENNIFER L. COON**
   California State Bar No. 203913
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   (619) 234-8467/Fax: (619) 687-2666
4  E-Mail: jennifer_coon@fd.org

5  Attorneys for Mr. Juan Heron-Salinas

6

7

8                        UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10                     **(HONORABLE JEFFREY T. MILLER)**

11  UNITED STATES OF AMERICA,           )    CASE NO. 07CR2872-JM
                                         )
12          Plaintiff,                   )    DATE:      January 25, 2008
                                         )    TIME:      11:30 a.m.
13  v.                                   )
                                         )    STATEMENT OF FACTS AND
14  **JUAN HERON-SALINAS,**              )    MEMORANDUM OF POINTS AND
                                         )    AUTHORITIES IN SUPPORT OF MOTIONS
15          Defendant.                   )
    _____     )

16

17                                      **I.**

18                         **STATEMENT OF FACTS**[1]

19        Mr. Juan Heron-Salinas became a lawful permanent resident of the United States on December 1,

20  1990. *See* Exhibit A (Record of Lawful Permanent Residence).[2]  He has been married to his wife, Maria

21  Garcia, who is also a long-time lawful permanent resident, for 15 years.  The couple have three daughters,

22  Brenda, Reyna, and Veronica, who are all U.S. citizens.  In addition, Mr. Heron-Salinas has raised his

23  stepson, Victor, also a U.S. citizen, since Victor was just one year old.  Mr. Heron-Salinas is a beloved

24  _____

25        [1] The following statement of facts is based primarily on information provided by the government.
26  Mr. Heron-Salinas does not admit the accuracy of the information and reserves the right to challenge its
    accuracy.
27
          [2] Exhibits A through C are true and correct copies of documents produced by the government from
28  Mr. Heron-Salinas's A-file.

1  husband and father, who has always financially supported his family and been closely involved in his

2  children's lives.  He also supports his mother, an elderly woman living in the Los Angeles area.

3      According to information provided by the government, on December 30, 2004, an immigration judge

4  (IJ) ordered Mr. Heron-Salinas removed from the United States.  *See* Exhibit B (Order of the Immigration

5  Judge).  Before Mr. Heron-Salinas's removal hearing, in a Notice to Appear, the immigration service alleged

6  that Mr. Heron-Salinas had suffered a conviction on January 18, 2000, for assault with a firearm in violation

7  of Cal. Penal Code Section 245(a).  *See* Exhibit C (Notice to Appear).  The immigration service further

8  alleged that this conviction rendered Mr. Heron-Salinas removable because it was a crime of violence which

9  constituted an aggravated felony.  *Id.*  No other basis for removal was alleged in the Notice to Appear.  *Id.*

10 At the removal hearing, the IJ erroneously found that Mr. Heron-Salinas had suffered an aggravated felony.

11 As a result, the IJ not only mis-informed Mr. Heron-Salinas that he was removable, but also mis-informed

12 him that he did not qualify for any relief, and failed to inform him of a number of forms of relief for which

13 he might be eligible – including, but not limited to, cancellation of removal, adjustment of status, and

14 voluntary departure.[3]

15      On August 28, 2007, the government reinstated the previous removal order.  Accordingly, the only

16 basis for the 2007 removal was the previous removal order based on Mr. Heron-Salinas's alleged conviction

17 for an aggravated felony.

18                                          **II.**

19      **THE INDICTMENT MUST BE DISMISSED DUE TO AN INVALID DEPORTATION**

20      In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a

21 meaningful opportunity for judicial review of the underlying deportation.  *United States v. Zarate-Martinez*,

22 133 F.3d 1194, 1197 (9th Cir. 1998).  A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a

23 Fifth Amendment right to attack his removal order collaterally because the removal order serves as a

24 predicate element of his conviction.  *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987) ("Our

25 cases establish that where a determination made in an administrative proceeding is to play a critical role in

26 the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative

27 ───────────────

28      [3] A transcript of relevant portions of the deportation tape will be submitted under separate cover.

1 proceeding"); *see also United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004).

2       Pursuant to 8 U.S.C. § 1326(d), to attack a deportation collaterally, a defendant must demonstrate:

3 (1) that the defendant exhausted all administrative remedies available to him to appeal his removal order;

4 (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the

5 opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair.

6 **A.       The Removal Order Was Fundamentally Unfair**

7       An underlying removal order is fundamentally unfair if:  (1) a defendant's due process rights were

8 violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the

9 defects. *See Ubaldo-Figueroa*, 364 F.3d at 1048.  An IJ violates due process by erroneously determining that

10 an alien's prior conviction is an aggravated felony, and therefore erroneously advising him that he is ineligible

11 for discretionary relief. *See United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006).  Moreover,

12 Mr. Heron-Salinas suffered prejudice because he had not committed an aggravated felony, the only ground

13 of removability pursued at the removal hearing.  *See id.* at 930 (alien's "Notice to Appear charged him as

14 removable only for having committed an aggravated felony; as discussed above, [alien's] prior conviction

15 did not fit that definition. Thus, [the alien] was removed when he should not have been and clearly suffered

16 prejudice").

17       **1.       California Assault with a Firearm is Not an "Aggravated Felony"**

18       During Mr. Heron-Salinas's immigration proceedings, the immigration judge found Mr. Heron-Salinas

19 removable as an aggravated felon based on his alleged conviction for assault with a firearm in violation of

20 Cal. Penal Code § 245(a).  This alleged conviction was the sole basis for the immigration judge's order of

21 removal.

22       Cal. Penal Code § 245(a)(2) prohibits "an assault upon the person of another with a firearm."  Assault

23 is "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

24 Cal. Penal Code § 240.  Assault is a general intent crime, and does not require a specific intent to injure the

25 victim. *People v. Williams*, 26 Cal. 4th 779, 788 (2001).  Rather, to secure a conviction for violation of Penal

26 Code 245, the state need only prove that a person acted with "conscious disregard of human life and safety,"

27 and the requisite intent is then "presumed." *People v. Lathus*, 110 Cal. Rptr. 921, 924 (1973).  Moreover, an

28 assault does not require "a subjective awareness of the risk that an injury might occur." *Williams*, 26 Cal.

1  4th at 790. Thus, "a defendant who honestly believes that his act was not likely to result in a battery is still

2  guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would

3  directly, naturally and probably result in a battery." *Williams*, 26 Cal. 4th at 788 n.3. "The law is seeking

4  to punish the reckless disregard of human life." *People v. Griggs*, 265 Cal. Rptr. 53, 57 (1989).

5     Based on this alleged conviction, and this conviction only, the IJ found that Mr. Heron-Salinas had

6  suffered an "aggravated felony" and was thus removable. Specifically, the IJ found that Mr. Heron-Salinas's

7  conviction for assault with a firearm was a "crime of violence," and thus an "aggravated felony."

8     **2.   Impact of *Leocal v. Ashcroft* on "Aggravated Felonies"**

9     In 2004, the Supreme Court clarified the statutory meaning of a "crime of violence" for purposes of

10  the "aggravated felony" definition contained in 8 U.S.C. § 1101(a)(43). *Leocal v. Ashcroft*, 543 U.S. 1

11  (2004). Under the clarification provided by the Supreme Court and subsequent Ninth Circuit precedent, Mr.

12  Heron-Salinas's assault conviction is not a "crime of violence" and is thus not an "aggravated felony."

13     "The Immigration and Nationality Act defines an 'aggravated felony' to include 'a crime of violence

14  (as defined in section 16 of Title 18...)." *Lara-Cazares v. Gonzales*, 408 F.3d 1217, 1219-20 (9th Cir. 2005).

15  In turn,

16     The term "crime of violence' means-

17     (a) an offense that has as an element the *use*, attempted *use*, or threatened *use* of physical force
   *against the person or property of another*, or

18

19     (b) any other offense that is a felony and that, by its nature, involves a substantial risk that
   physical force *against the person or property of another may be used in the course of*
   *committing the offense*.

20

21  *Id.* (emphasis in original) (citing 18 U.S.C. § 16).

22     "In *Leocal*, the Supreme Court addressed the question whether a conviction under Florida law for

23  driving under the influence of alcohol (DUI) and causing serious bodily injury qualified [as a 'crime of

24  violence'] under § 16. The Court unanimously held that the conviction did not qualify as a crime of

25  violence." *Lara-Cazares*, 408 F.3d at 1220 (citing *Leocal*, 543 U.S. at 10-11). It did so by construing the

26  "common meaning of the [words] 'use' of force 'against the person' of another," as those words are used in

27  section 16. *Id.* As the Supreme Court noted, these terms are most readily understood as requiring some type

28  of active employment of force. *See id.* at 1220-21. For this reason, the Supreme Court construed section 16

1  to require "a higher degree of intent than negligent or merely accidental conduct." *Id.* (quoting *Leocal*, 543

2  U.S. at 9).

3      This requirement applies with equal force to both subsection (a) and subsection(b) of section 16. "The

4  key phrase in 16(a) – the 'use … of physical force' … naturally suggests a higher degree of intent than

5  negligent or merely accidental conduct." *Lara-Cazares*, 408 F.3d at 1220 (quoting *Leocal*, 543 U.S. at 9).

6  So too under subsection (b).  To qualify as a "crime of violence" under subsection (b), a conviction too must

7  "requir[e] a higher *mens rea* than the merely accidental or negligent conduct involved in a DUI offense.  This

8  is particularly true in light of § 16(b)'s requirement that the 'substantial risk' be a risk of using physical force

9  against another person 'in the course of committing the offense.'" *Lara-Cazares*, 408 F.3d at 1220 (citing

10  and quoting *Leocal*, 543 U.S. at 10-11).  In other words, to qualify as a "crime of violence" under section 16,

11  a conviction must involve (at least) a higher mental state than "accidental or negligent conduct" on the part

12  of a criminal defendant.  *Id.* at 1220 (citing *Leocal*, 543 U.S. at 10-11); *see also id.* at 1220 (applying *Leocal*

13  to a California driving under the influence statute requiring "gross negligence").

14      The Ninth Circuit further clarified the Supreme Court's decision in *Leocal*.  In *Fernandez-Ruiz v.*

15  *Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (*en banc*), the defendant was convicted of an Arizona statute which

16  defined assault as the intentional, knowing or *reckless* causing of physical injury to another person.  *Id.* at

17  1225.  The Arizona statutes defined recklessness as "consciously disregarding a substantial and unjustifiable

18  risk that the result will occur or the circumstances exist." *Id.* at 1130.  The *en banc* court held that this crime

19  – under *Leocal* – did not qualify as a "crime of violence" for purposes of the immigration law.  As the *en banc*

20  court put it, "Thus, the reckless use of force is 'accidental' and crimes of recklessness cannot be crimes of

21  violence." *Id.*

22      Consistent with this authority, the Ninth Circuit recently found that discharging a firearm at an

23  inhabited dwelling, in violation of Cal. Penal Code § 246, is not a categorical crime of violence. *See United*

24  *States v. Narvaez-Gomez*, 489 F.3d 970, 977 (9th Cir. 2007).  The court noted that, as with the offense at issue

25  here, Penal Code § 246 required a "conscious indifference" intent element which was equivalent to

26  recklessness. *See id.* at 976.  Because violation of Penal Code § 246 could result from purely reckless

27  conduct, the offense could not constitute a categorical crime of violence. *See id.* at 977.

28      The same is true here.  The crime for which Mr. Heron-Salinas was removed – California Penal Code

1  § 245 – does not meet the definition of a "crime of violence" in 18 U.S.C. § 16.  California Penal Code § 245

2  does not require specific intent to cause injury, or even a subjective awareness that such injury might occur,

3  but only a "conscious disregard" or "reckless disregard" of the probable consequences.  *See Williams*, 26 Cal.

4  4th at 790; *Griggs*, 265 Cal. Rptr. at 57.  Such a *mens rea* is equivalent to recklessness.  *See Fernandez-Ruiz*,

5  466 F.3d at 1130.  Accordingly, Penal Code § 245 is not an offense that includes an element of use (or

6  attempted use) of force against another, as those phrases were construed by *Leocal*.  Nor does Penal Code

7  section 245 involve, "by its nature," "a substantial risk that physical force" will be used, as those terms were

8  construed by *Leocal*.  To suffer a conviction under Section 245, a person need not "actively employ force

9  against another in a manner to constitute a crime of violence under § 16."  *Lara-Cazares,* 408 F.3d at 1221.

10  For these reasons, Mr. Heron-Salinas's alleged conviction for assault with a firearm is not a "crime of

11  violence" within the meaning of 18 U.S.C. § 16 and thus not an "aggravated felony."  *Id.*; *Leocal*, 543 U.S.

12  at 11.

13  **B.        Mr. Heron-Salinas is Excused from § 1326(d)'s Exhaustion Requirement.**

14           Following his 2004 removal hearing, Mr. Heron-Salinas did not seek administrative review of the IJ's

15  order of removal.  Normally, a defendant charged with violating § 1326 who wishes to collaterally challenge

16  his removal must have exhausted any administrative remedies available to him.  *See* 8 U.S.C. § 1326(d)(1).

17  However, a defendant need not satisfy the exhaustion requirement if his waiver of an administrative appeal

18  was invalid.  *See United States v. Muro-Inclan*, 249 F.3d 1180, 1183-84 (9th Cir. 2001).  An IJ's failure to

19  advise an alien of his eligibility for relief renders the appeal waiver invalid, because it was not "considered

20  and intelligent."  *See United States v. Gonzalez*, 429 F.3d 1252, 1256 (9th Cir. 2005); *United States v. Arrieta*,

21  224 F.3d 1076, 1079 (9th Cir. 2000).

22           Here, the IJ misinformed Mr. Heron-Salinas of his eligibility for relief from removal.  Specifically,

23  the IJ misinformed Mr. Heron-Salinas that he was removable as an aggravated felon; and also failed to inform

24  him that he was eligible for a number of forms of relief, such as cancellation of removal, adjustment of status,

25  and voluntary departure.  In particular, because he had not suffered an aggravated felony, and because he was

26  a longtime lawful permanent resident, Mr. Heron-Salinas could have sought cancellation of removal relief

27  under INA § 240A.  INA § 240A allows the Attorney General to cancel removal for an alien if he has (1) been

28  a legal permanent resident for five or more years, (2) has resided in the United States continuously for seven

1 or more years after being admitted, and (3) has not been convicted of any aggravated felony. *See* 8 U.S.C.

2 § 1229b(a). Thus, Mr. Heron-Salinas would have been eligible for cancellation of removal relief if the IJ had

3 not erroneously determined that his alleged conviction under Cal. Penal Code § 245 was an aggravated

4 felony.

5       In this specific context, the Ninth Circuit has excused a defendant from exhausting his administrative

6 rights because of an IJ's erroneous advisal that the defendant was removable as an "aggravated felon."

7 *Camacho-Lopez*, 450 F.3d at 930.  As in *Camacho-Lopez*, and due to the IJ's error, Mr. Heron-Salinas is

8 excused from § 1326(d)'s exhaustion requirement.

9 **C.**      **Mr. Heron-Salinas was Denied Judicial Review**

10       Similarly, the IJ's failure to inform Mr. Heron-Salinas of his eligibility for relief from removal

11 deprived him of an opportunity to seek judicial review of the IJ''s removal order.  A defendant seeking to

12 collaterally challenge a deportation under § 1326(d) normally must show that he was improperly denied the

13 opportunity for judicial review. *See* 8 U.S.C. 1326(d)(2). An IJ's failure to inform a person of their eligibility

14 for relief from removal satisfies the requirement that a defendant be denied his opportunity to seek judicial

15 review.  *Camacho-Lopez*, 450 F.3d at 930; *Ubaldo-Figueroa*, 364 F.3d at 1047; *Ortiz-Lopez*, 385 F.3d at

16 1204 n.2.  In this context, the Ninth Circuit has held that a defendant was denied judicial review because of

17 an IJ's erroneous advisal that the defendant was removable as an "aggravated felon." *Camacho-Lopez*, 450

18 F.3d at 930.  As in *Camacho-Lopez*, and due to the IJ's error, Mr. Heron-Salinas was effectively denied

19 judicial review.

20                                          **III.**

21 **MOTION FOR LEAVE TO SUPPLEMENT MOTION AND TO FILE ADDITIONAL MOTIONS**

22       Defense counsel is still in the process of obtaining evidence in support of this motion.  Therefore,

23 counsel requests the opportunity to supplement this motion at the hearing on this matter.  In addition,

24 discovery is continuing.  Defense counsel therefore requests leave to file further motions as necessary, based

25 upon information gained through the discovery process.

26 //

27 //

28 //

07CR2872-JM

1 | //

2 | //

3 | **IV.**

4 | **CONCLUSION**

5 | For the foregoing reasons, Mr. Heron-Salinas respectfully requests that the Court grant his motion to

6 | dismiss the indictment due to an invalid deportation.

7 | Respectfully submitted,

8 |

9 | DATED:       January 11, 2008                          /s/ *Jennifer L. Coon*
                                                           **JENNIFER L. COON**
10 |                                                        Federal Defenders of San Diego, Inc.
                                                           Attorneys for Mr. Heron-Salinas
11 |                                                        Jennifer_Coon@fd.org

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

1                                          INDEX OF EXHIBITS

2  EXHIBIT A    Permanent Resident ID and Documents

3  EXHIBIT B    Order of the Immigration Judge

4  EXHIBIT C    Notice to Appear

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07CR2872-JM

1 **CERTIFICATE OF SERVICE**

2     Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of her

3 information and belief, and that a copy of the foregoing document has been served this day upon:

4     Courtesy Copy Court

5     Copy Nicole A Jones, Nicole.Jones@usdoj.gov,leticia.granada@usdoj.gov,efile.dkt.gc1@usdoj.gov
      via ECF/NEF

6

7 Dated: January 11, 2008                          */s/  Jennifer L. Coon*
                                                   JENNIFER L. COON
8                                                  Federal Defenders of San Diego, Inc.
                                                   225 Broadway, Suite 900
9                                                  San Diego, CA 92101-5030
                                                   (619) 234-8467  (tel)
10                                                 (619) 687-2666  (fax)
                                                   e-mail: Jennifer_Coon@fd.org

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28