1  KAREN P. HEWITT
   United States Attorney
2  NICOLE ACTON JONES
   Assistant U.S. Attorney
3  California State Bar No. 231929
   United States Attorney's Office
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-5482
   E-mail: nicole.jones@usdoj.gov
6
   Attorneys for Plaintiff
7  United States of America

8              **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10
   UNITED STATES OF AMERICA      ) Criminal Case No. 07CR2872-JM
11                               )
                  Plaintiff,     ) **GOVERNMENT'S RESPONSE AND**
12                               ) **OPPOSITION TO DEFENDANT'S MOTIONS**
                                 ) **TO:**
13     v.                        )
                                 ) **(1)  DISMISS INDICTMENT DUE TO**
14                               )      **INVALID DEPORTATION;**
   JUAN HERON-SALINAS,           ) **(2)  GRANT LEAVE TO SUPPLEMENT**
15                               )      **MOTION AND TO FILE FURTHER**
                  Defendant.     )      **MOTIONS**
16                               )
                                 ) **TOGETHER WITH STATEMENT OF FACTS**
17                               ) **AND MEMORANDUM OF POINTS AND**
                                 ) **AUTHORITIES**
18                               )
                                 ) Date:      January 25, 2008
19                               ) Time:      11:30 a.m.
                                 ) Court:   Hon. Jeffrey T. Miller
20                               )
21 _____   )

22      COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and

23 through its counsel, Karen P. Hewitt, United States Attorney,

24 and Nicole Acton Jones, Assistant United States Attorney, and

25 hereby files its Response and Opposition to Defendant's above-

26 captioned motions.  Said response and opposition is based upon

27 the files and records of this case together with the attached

28 statement of facts and memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On October 17, 2007, a federal grand jury in the Southern District of California returned a one-count Indictment charging defendant Juan Heron-Salinas("Defendant") with Attempted Entry After Deportation, in violation of Title 8, United States Code, Section 1326.  On October 30, 2007, Defendant was arraigned on the Indictment and entered a plea of not guilty.

**II**

**STATEMENT OF FACTS**

**A.    Defendant's Apprehension**

On October 9, 2007, at about 6:30 a.m., Defendant attempted to enter the United States from Mexico through the San Ysidro Port of Entry.  Specifically, Defendant was found, along with three other people, concealed in the trunk of a 2001 Volkswagen Jetta.  Defendant was escorted to secondary inspection.

In secondary, Defendant's biographical information and fingerprints were entered into the IAFIS and immigration computer databases, which revealed Defendant's criminal and immigration history. Defendant was then advised of his <u>Miranda</u> rights in the Spanish language.  Defendant elected to invoke his right to remain silent.  Defendant was also advised of his consular communication rights and he notified a consular officer of his arrest.

**B.    Defendant's Criminal and Immigration History**

On January 18, 2000, Defendant was convicted in Los Angeles Superior Court of Assault with a Firearm on a Person in

1  violation of California Penal Code § 245(a)(2).  Defendant was

2  sentenced to 72 months in custody.

3      On December 4, 2006, Defendant was convicted in this

4  District of alien smuggling in violation of 8 U.S.C. § 1324.

5  Defendant was sentenced to 18 months in custody

6      Defendant appeared before an Immigration Judge for a

7  deportation hearing on December 30, 2004 and was physically

8  removed from the United States to Mexico through the Calexico

9  Port of Entry.  Defendant was most recently physically removed

10  to Mexico on October 1, 2007 through Pennsylvania following his

11  release from Federal Correctional Institution Gilmer.

### III

### DEFENDANT'S DEPORTATION WAS VALID BECAUSE HE IS
### AN AGGRAVATED FELON

15     The sole basis for Defendant's motion to invalidate his

16  prior order of deportation is that the immigration judge

17  erroneously found him to be removable as an aggravated felon.

18  Defendant's argument is based on his contention that his prior

19  conviction for Assault with a Firearm on a Person, in violation

20  of California Penal Code Section 245(a)(2) is not a "crime of

21  violence" and therefore is not an aggravated felony under 8

22  U.S.C. § 1101(a)(43).

23     According to Defendant, a person can be convicted of assault

24  in California based upon merely reckless conduct, but Defendant

25  has not provided a single case where a California court has

26  upheld an assault conviction based upon anything less than

27  intentional conduct.  Moreover, as Defendant knows full well

28  (and has utterly failed to address in his motion), even if this

Court were to resort to the modified categorical approach, there is no question that Defendant's conduct, which included "willfully and unlawfully" committing an assault on a person with a firearm and "personally inflict[ing] great bodily injury" upon his victim would satisfy the definition of a crime of violence. See Ex. __.[1/]

Even without regard to the specific facts of Defendant's prior conviction, his motion is without merit. A review of the statutory language and the applicable authority reveals that a conviction under Section 245(a)(2) is categorically a crime of violence.

**A. ASSAULT WITH A DEADLY WEAPON IS A CRIME OF VIOLENCE**

Under Section 16 of Title 18, a crime of violence is defined as:

    (a)   an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

    (b)   any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

As the Ninth Circuit has recently explained, when conducting a categorical analysis to determine whether a state offense

_____

[1/] Defendant's lack of candor on this point is particularly disturbing considering that Defendant is in possession of the PSR created in the course of his 2006 alien smuggling conviction revealing the details of this assault, which include Defendant shooting and injuring his victim (who was walking away from him at the time) with a 9mm handgun. Defendant's explanation for his conduct was that he "shot a black man who was bothering me in my house." See Ex. 1 (excerpt from 2006 PSR). This PSR, of course, cannot be used in a modified categorical analysis, but its existence underscores the baseless nature of this motion. In the event the Court determines a modified categorical approach is required, the Government is currently attempting to obtain additional supporting documents.

07CR2872-JM

1   falls within the federal definition of a crime, the question is

2   "whether 'the elements of the offense are of the type that would

3   justify its inclusion.'" <u>United States v. Carson</u>, 486 F.3d 618,

4   619-20 (9th Cir. 2007), quoting <u>James v. United States</u>, — U.S.

5   —, 127 S.Ct. 1586, 1594 (2007).  Citing to recent Supreme Court

6   authority, the Ninth Circuit held that courts

> must not conjure up some scenario, however improbable,
> whereby a defendant might be convicted under the
> statute in question even though he did not commit an
> act encompassed by the federal provision.  Rather, we
> must find "a realistic probability, not a theoretical
> possibility," that this might happen.  <u>Gonzales v.</u>
> <u>Duenas-Alvarez</u>, — U.S. —, 127 S.Ct. 815, 822 (2007).
> In other words, "the proper inquiry is whether the
> conduct encompassed by the elements of the offense, *in
> the ordinary case*," would satisfy the requirements of
> [the federal provision.] <u>James</u>, 127 S.Ct. at 1597
> (emphasis added).

<u>Id.</u> at 620 (emphasis in original).

Defendant in this case is doing exactly what the Supreme

Court and the Ninth Circuit counseled against and makes the

strained argument that a quintessential crime of violence –

assault with a firearm – is not a crime of violence for purposes

of the immigration code.  Defendant is wrong.

**1.   Section 245(a)(2) Has as an Element "the Use, Attempted Use, or Threatened Use of Physical Force Against the Person or Property of Another"**

Under <u>Carson</u>, the Court must determine whether the conduct

encompassed by the elements of Defendant's crime "in the

ordinary case" satisfy the definition of a crime of violence

under Section 16.  <u>Carson</u>, 486 F.3d at 620.  The conviction at

issue in this case is Defendant's conviction for assault with a

firearm on a person.  <u>See</u> Cal. Penal Code § 245(a)(2).

California Penal Code Section 245(a)(2) – which falls under the

1  heading "Assault with deadly weapon or force likely to produce

2  great bodily injury; punishment" – provides as follows:

3       (a)(2) Any person who commits an assault upon the
        person of another with a firearm shall be punished by
4       imprisonment in the state prison for two, three, or
        four years, or in a county jail for not less than six
5       months and not exceeding one year, or by both a fine
        not exceeding ten thousand dollars ($10,000) and
6       imprisonment.

7  Id.  To be convicted of a violation of section 245(a)(2), the

8  following two elements must be met: (1) a person was assaulted;

9  and (2) the assault was committed with a firearm.  See Cal. Jury

10  Instr. Crim. 9.02.  The use notes to this instruction provide

11  that Cal. Jury Instr. Crim. 9.00, which sets out the elements of

12  an assault, "must be given along with this instruction in order

13  to provide a definition of assault."  Id.

14       California's assault statute defines assault as "an unlawful

15  attempt, coupled with present ability, to commit a violent

16  injury on the person of another."  See Cal. Penal Code § 240.

17  To be guilty of an assault under Section 240, the following

18  elements must be proven:

19       1.   A person **willfully** [and unlawfully] committed an
             act which by its nature would probably and
20           directly result in the **application of physical
             force** on another person;
21

22       2.   The person committing the act was **aware** of facts
             that would lead a reasonable person to realize
23           that as a direct, natural and probable result of
             this act that **physical force would be applied** to
             another person; and
24

25       3.   At the time the act was committed, the person
             committing the act had the present ability to
26           apply physical force to the person of another. **The
             word "willfully" means that the person committing
27           the act did so intentionally.**[2]  However, an

28  ─────────────

        [2] California's willfully/intentionally *mens rea* requirement
                                                        (continued...)
                              6                        07CR2872-JM

1
2
3
4
5

                    assault does not require an intent to cause injury
                    to another person, or an actual awareness of the
                    risk that injury might occur to another person. To
                    constitute an assault, it is not necessary that
                    any actual injury be inflicted. However, if an
                    injury is inflicted it may be considered in
                    connection with other evidence in determining
                    whether an assault was committed [and, if so, the
                    nature of the assault].

6   Cal. Jury Instr. Crim. 9.00 (emphasis added).  The notes to Cal.

7   Jury Instr. Crim. 9.00 further provide that this instruction

8   "should be given in all assault prosecutions." Cal. Jury Instr.

9   Crim. 9.00.

10       Given the above, it is clear that *any* form of assault as

11  defined in Cal. Penal Code § 240 must be regarded as a "crime of

12  violence" because assault under California law "requires at

13  least the attempted application of some physical force." United

14  States v. Bolanos-Hernandez, 492 F.3d 1140 (9th Cir. 2007).  In

15  Bolanos-Hernandez, the Court was considering whether assault to

16  commit rape, in violation of Cal. Penal Code §§ 220 and

17  261(a)(2), constituted a forcible sex offense under USSG §

18  2L1.2. In doing so, the Court observed that, as with assault

19  with a firearm under section 245(a)(2), "a conviction for

20  assault with intent to commit rape . . . requires proof of the

21  elements of attempted rape plus those of assault."

22  Bolanos-Hernandez, 492 F.3d at 1146.

23
24
25

        [2]/(...continued)
26  is in stark contrast to the Arizona assault statute at issue in
    Fernandez-Ruiz v. Gonzales, 466 F.3d 1121 (9th Cir. 2006), which
27  explicitly covered "intentionally, knowingly or *recklessly*
    causing any physical injury to another person." Id. at 1125
28  (emphasis in original).  In addition, the Arizona statute
    focuses on causing injury, while the California statute, like
    Section 16, focuses on the use of physical force.

                                7                          07CR2872-JM

1    The Court then set out the three elements of assault from
2  Cal. Jury Instr. Crim. 9.00, which are listed above. After doing
3  so, the Court concluded: "Each of [the elements of assault
4  contained in Cal. Jury Instr. Crim. 9.00] specifically discusses
5  the application of actual or attempted physical force on the
6  victim. Assault with intent to commit rape therefore requires at
7  least the attempted application of some physical force." Id. at
8  1146-47 (emphasis added). Using the same reasoning applied in
9  Bolanos-Hernandez, the Court should conclude that assault with
10 a firearm "requires at least the attempted application of some
11 physical force," and, as a result, constitutes a crime of
12 violence under Section 16(a). Bolanos-Hernandez, 492 F.3d at
13 1147.

14    Considering that the Taylor categorical analysis is
15 predicated upon an examination of the elements of the offense in
16 question, it is telling that a discussion of the elements of
17 assault and assault with a deadly weapon are nowhere to be found
18 in Defendant's brief. This is not surprising given that, as
19 described above, the elements of assault under California law
20 are replete with references to the language required by Section
21 16, i.e. "willing"/"intentional" acts, the natural result of
22 which would be "the application of physical force" on another
23 person. Cal. Jury Instr. Crim. 9.00.

24    Rather than focus on the elements of the crime of assault,
25 Defendant's entire brief is based on the one thing California
26 courts do not require: proof that the individual intended to
27 cause or knew he was likely to cause injury to another. [Mot. at
28 3 (assault "does not require a specific intent to injure the

victim); ("assault does not require a subjective awareness of the risk that injury might occur"); <u>id.</u> at 6 (assault with a deadly weapon "does not require specific intent to cause injury, or even a subjective awareness that such injury might occur, but only a 'conscious disregard' or a 'reckless disregard' of the probable consequences"). This is much ado about nothing because Section 16 does not require that the act of violence result in "injury;" rather, the focus is on whether the offense requires the use, attempted use, or threatened use of physical force against another person. <u>See</u> 18 U.S.C. § 16(a). California's assault statutes, as discussed above, easily satisfy this requirement.

**2.    Section 245(a)(2), "by its nature, involves a substantial risk that physical force against the person . . .may be used in the course of committing the offense"**

Given the elements required to prove a violation of Section 245(a)(2), it is impossible to imagine how an individual (1) could commit the offense of an assault upon the person of another (<u>i.e.</u> "an unlawful attempt, coupled with present ability, to commit a violent injury on the person of another", Cal. Penal Code § 240) and (2) in the course of that assault use a deadly weapon (<u>i.e.</u> a firearm, Cal. Penal Code § 245(a)(2)) without creating a substantial risk of using physical force against a person.

Nor has Defendant offered any such scenario based on either California caselaw or his own crime. In fact, the elements of assault directly answer this very question by describing the act of assault as being "an act *which by its nature* would probably and directly result in the application of physical force on

another person." Cal. Jury Inst. 9.00 (1) (emphasis added). It goes without saying that if a standard assault naturally involves a substantial risk of force or injury to person, an assault *with a firearm* would involve an even more substantial risk.

Defendant attempts to argue otherwise by reference to <u>Lara-Cazares v. Gonzalez</u>, 408 F.3d 1217 (9th Cir. 2005). [Motion at 5.] Defendant's citation, however, is taken out of context. In <u>Lara-Cazares</u>, the Court held that gross vehicular manslaughter while intoxicated was not a crime of violence. The Court explained that the "substantial risk" required by 16(b) requires a connection between the potential use of force and the offense itself. <u>Id.</u> at 1220. The Court found that "[i]n no 'ordinary or natural' sense can it be said that a person risks having to 'use' force against another person in the course of operating a vehicle while intoxicated and causing injury." <u>Id.</u> In other words, a substantial risk of an *accidental* application of force, as a by-product of the offense, is not sufficient. The risk must be of an *intentional* use of force as part of the offense itself.

Under this analysis, both assault and assault with a deadly weapon clearly qualify under Section 16(b) because both offenses require a willful (defined as intentional) act "which by its nature" creates a substantial risk that physical force will be applied as an essential element of the offense. <u>Lara-Cazares</u>, which is focused on accidental applications of force, is inapposite.

//

### 3.  **Leocal** and **Fernandez-Ruiz** do not compel a different result

Defendant contends that despite the fact that the plain language of California's assault statute satisfies both Section 16(a) and 16(b), assault is not a crime of violence. Defendant's argument is based on a misunderstanding (if not a misrepresentation) of the applicable authority.

        a.  Leocal and Fernandez-Ruiz only require intentional conduct

To focus the discussion, the Government does not dispute that, under the current state of the law, recklessness and negligence are insufficient *mens rea* to constitute a crime of violence, or that qualifying crimes must involve the "intentional" use or threatened use of force. See Leocal v. Ashcroft, 543 U.S. 1, 10-11 (2004) (using force accidently or negligently is not a crime of violence) and Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1130, 1132 (9th Cir. 2006) (extending Leocal to crimes involving the recklessness and gross negligence). The Government does, however, dispute Defendant's contention that California's assault statutes do not satisfy Leocal and Fernandez-Ruiz.

At most, Leocal is consistent with the notion that the required use or threatened use of force for a crime of violence should be "intentional," as opposed to "accidental." In describing offenses that qualify, Leocal said "the critical aspect" of 18 U.S.C. § 16(a) is that a crime of violence requires the "active employment" of force against the person or property of another. 543 U.S. at 9. By way of contrast, the Court noted that one who "actively employs" force against

another person cannot naturally be said to do so "by accident." Id. Insofar as "intentional" is an accepted antonym of "accidental",[3/] one can draw support from this language in Leocal for the idea that a crime of violence entails "intentional" conduct.

As for Fernandez-Ruiz, in stating its holding and describing a "crime of violence" under 18 U.S.C. § 16, the Ninth Circuit simply – and repeatedly – used the adjective "intentional." See, e.g., 466 F.3d at 1123 ("Because the relevant Arizona statute permits conviction when a defendant recklessly but unintentionally causes physical injury to another, and because the petitioner's documents of conviction do not prove he intentionally used force against another, we conclude the federal statute does not apply."); id. at 1130 ("But this subjective awareness of possible injury is not the same as the intentional use of physical force against the person of another"); id. at 1132 ("The bedrock principle of Leocal is that to constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another.")

    b.    California Courts Require Intentional Conduct to Support an Assault Conviction

California Penal Code § 245(a)(2) meets the definition of "crime of violence" that emerges from Leocal and Fernandez-Ruiz because the crime requires an "intentional" use, attempted use or threatened use of force on the person of another. The model California jury instructions state as much. Cal. Jury Instr.

---

[3/]See http://thesaurus.reference.com/browse/accidental

Crim. 9.00 (assault - defined) (listing element that one act "willfully" and providing, "The word 'willfully' means that the person committing the act did so intentionally."). The intermediate California courts have held as much. <u>See, e.g.,</u> <u>People v. Griggs</u>, 216 Cal. App. 3d 734, 740 (Cal. Ct. App. 1989) ("The requisite intent for the commission of an assault with a deadly weapon is the intent to commit battery."). So has the California Supreme Court. <u>See</u> <u>People v. Colantuono</u>, 7 Cal. 4th 206, 214 (Cal. 1994) (to be convicted of assault with deadly weapon, "the defendant must intentionally engage in conduct that will likely produce injurious consequences"); <u>id.</u> at 217 n.8 ("to commit an assault one must willfully attempt a violent act against another").

By the same token, California courts have explicitly held that "reckless" or "negligent" conduct is insufficient to sustain a conviction for assault with a deadly weapon. <u>See</u> <u>People v. Williams</u>, 26 Cal. 4th 779, 788 (Cal. 2001) ("mere recklessness or criminal negligence is still not enough ... because a jury cannot find a defendant guilty of assault based on facts he should have known but did not know"); <u>People v.</u> <u>Rocha</u>, 3 Cal. 3d 893, 898 (Cal. 1971) (after noting that earlier cases had held that a Penal Code § 245 offense "could be predicated upon mere reckless conduct," adding that, in <u>People</u> <u>v. Carmen</u>, 36 Cal. 2d 768 (Cal. 1951), "we disapproved those cases and held that mere reckless conduct alone cannot constitute an assault"); <u>People v. Smith</u>, 57 Cal. App. 4th 1470, 1480 (Cal. Ct. App. 1997) ("It follows that criminal negligence

1   is not sufficient to establish an assault.")[4]; <u>People v. Brown</u>,

2   212 Cal. App. 3d 1409, 1419-20 (Cal. Ct. App. 1989) ("Intent to

3   frighten or mere reckless conduct is insufficient."; "Pointing

4   the loaded gun in [the victim's] direction and then firing it

5   off can clearly be inferred as reflecting an intent to injure

6   and not merely an intent to frighten."), disapproved on other

7   grounds by <u>People v. Haves</u>, 52 Cal. 3d 577, 628  n.10 (Cal.

8   1990).[5]

9       Oddly, Defendant cites to some of these cases to support his

10  argument that, under California law, assault and assault with a

11  deadly weapon only require a *mens rea* of recklessness or

12  conscious disregard. [Mot. at 3, 4, and 6, citing <u>Williams</u>; <u>id.</u>

13  at 4, 6 citing <u>Griggs</u>].  Defendant accomplishes this by avoiding

14  the portions of these cases that expressly disavow the

15  recklessness standard and in so doing misrepresents the holding

16  of these cases.

17      For example, Defendant cites <u>Williams</u> for the [uncontested]

18  proposition that "assault does not require a specific intent to

19  cause injury or a subjective awareness of the risk that an

20

21      [4]In <u>Smith</u>, the court reversed an assault with a deadly
    weapon conviction where the defendant's vehicle struck a police
22  officer as the defendant was attempting to drive through a
    police barricade.  576 Cal. App. 4th at 1475.  The court found
23  the jury instructions were erroneous because, in conjunction
    with the court's responses to jury questions, the instructions
24  allowed the jury convict simply upon a showing that the
    defendant intended to move his vehicle forward (criminal
25  negligence/recklessness) rather than the required intent to
    commit a battery.  <u>Id.</u> at 1478-79.
26

27      [5]The California Supreme Court has even gone so far as to
    provide the following illustrative hypothetical: "Thus, a person
28  who recklessly exhibits a weapon in a threatening manner which
    accidentally discharges injuring another does not commit an
    assault with a deadly weapon, but would be guilty of violating
    Penal Code section 417."  <u>See</u> <u>Rocha</u>, 3 Cal. 3d at 898 n.5.

1  injury might occur." [Mot. at 3, 6.]  Defendant fails, however,

2  to cite the very next sentence holding that an assault

3  conviction "requires an *intentional act* and *actual knowledge* of

4  those facts sufficient to establish that the act by its nature

5  will probably and directly result in the application of physical

6  force against another."  26 Cal.4th at 790 (emphasis added).

7       Not only does Defendant misrepresent the holding in

8  <u>Williams</u>, Defendant fails to set forth the facts that provide

9  context for that holding.  The defendant in <u>Williams</u> had loaded

10  and then fired a shotgun directly into the passenger-side wheel

11  well of his girlfriend's ex-husband's truck.  The ex-husband was

12  approximately a foot and a half away from the vehicle and his

13  minor sons were also in the vicinity at the time of the

14  shooting.  26 Cal. 4th at 782-83.  These facts clearly show

15  that, regardless of whether the defendant had intended to cause

16  injury, he had engaged in an intentional act of violence.

17       Defendant's selective citation to <u>Griggs</u> is equally

18  unavailing.  <u>Griggs</u> involved a defendant who fired at least two

19  shots into a crowd of people leaving a concert.  216 Cal. App.

20  3d at 737.  The question addressed by <u>Griggs</u> was whether an

21  assault with a deadly weapon requires "an identifiable and named

22  victim."  <u>Id.</u> at 740.

23       The court in <u>Griggs</u> explained that the requisite intent for

24  an assault with a deadly weapon is "intent to commit a battery."

25  <u>Id.</u>  As to the identity of the victim, the court concluded that

26  "all that is necessary is that there is a victim; the

27  characteristics of the victim are not critical elements of the

28  offense.  The law is seeking to punish the reckless disregard of

human life, and what needs to be shown is that a human life was threatened in the manner proscribed in sections 245 and 240." Id. at 742.  In context, it is clear that court's use of the word "reckless" was in reference to the consequences (i.e. an unintended victim) of the defendant's *intentional* act of violence.

As for the citation to People v. Lathus, 35 Cal. App. 3d 466, 469-70 (Cal. Ct. App. 1973), Defendant conveniently ignores that the court began by reaffirming that "[r]eckless conduct alone does not constitute a sufficient basis for assault or battery even if the assault results in an injury to another." Id. at 469. Defendant also partially cites the following language, which the Government will provide in full:

> However, when an act inherently dangerous to others is committed with a conscious disregard of human life and safety, the act transcends recklessness, and the intent to commit the battery is presumed; the law cannot tolerate a deliberate and conscious disregard of human safety.  Thus, if one deliberately employs a lethal weapon, such as a gun, with the actual or presumptive knowledge that if utilized in the manner in which it is being used the infliction of serious bodily injury to another is very likely to occur, he is presumed to have intended the natural consequences of his deliberate act.[6]

Id.

In People v. Cotton, 113 Cal. App. 3d 294 (Cal. Ct. App. 1980), the defendant had collided with another vehicle as he was attempting to evade police and was convicted of assault with a deadly weapon.  On appeal, the state relied upon the above

---

[6] In Colantuono, the court explained that the above language from Lathus was made in the context of determining the sufficiency of the evidence.  7 Cal. 4th at 219.  The court further cautioned that such language should not be used as a jury instruction because "intent always remains an issue of fact" and the requisite intent cannot be presumed.  Id. at 221.

1  language from _Lathus_ to support the trial court's determination
2  that even though the defendant had not intended to hit anyone
3  while trying to escape, "the whole course of defendant's
4  reckless driving" supplied the requisite intent to commit a
5  battery.  _Id._ at 302-303.  The court in _Cotton_ found that
6  language from _Lathus_ was not only dicta, but that the language
7  must be read in context.  _Id._ at 302.

8      Thus, the language defendant cites must read in light of the
9  facts in _Lathus_: a defendant who "fired several pistol shots
10 from a moving vehicle at a car parked on the shoulder of the
11 road", (resulting in injury to a person standing next to the
12 car) _and_ the issue before the court: whether the state was
13 required to prove that the defendant had specifically intended
14 to shoot someone.  The court in _Cotton_ easily distinguished
15 _Lathus_ and reversed the defendant's conviction for assault with
16 a deadly weapon after finding that the defendant's conduct
17 amounted to only reckless driving.  _Id._ at 306.

18     As the California Supreme Court has explained and the above
19 decisions illustrate, the focus is properly "on the violent-
20 injury-producing nature of the defendant's acts, rather than on
21 a separate and independent intention to cause such injury."
22 _Williams_, Cal.4th at 785, quoting _Colantuono_, 7 Cal.4th at 215.
23 Instead, "[t]he pivotal question is whether the defendant
24 intended to commit an act likely to result in such physical
25 force, not whether he or she intended a specific harm."  _Id._,
26 quoting _Colantuono_, 7 Cal.4th at 218.  Indeed, _Fernandez-Ruiz_
27 specifically held that "subjective awareness of possible injury
28 is not the same as the intentional use of physical force against

the person of another."  466 F.3d at 1130.  This statement makes clear that the focus of the analysis is on the defendant's *conduct* not the consequences of that conduct.

A review of the statutory language, the elements and the relevant caselaw establishes that an assault under California law clearly requires an intentional act involving the use, attempted use or threatened use of force, or at least an intentional act that by its nature, involves a substantial risk that physical force may be used against a person.  Accordingly, such an offense is a crime of violence.

       c.   General intent crimes can qualify as crimes of violence

Defendant implies that only specific intent crimes satisfy the *mens rea* requirement for a crime of violence. [Mot. at 3, 6.]  The phrase "specific intent" appears nowhere in <u>Leocal</u>. Nor did the Supreme Court hold or suggest, by other language, that a crime must have specific intent to be a "crime of violence" under federal law, or that general intent offenses can never qualify.

Even though assault with a deadly weapon in California is a general intent crime, as discussed above, it still requires "intentional" conduct within the meaning of <u>Leocal</u>. <u>United States v. Salazar-Gonzalez</u>, 458 F.3d 851, 855 (9th Cir. 2006) (even if he need not know that his actions are illegal, a person who acts with general intent must still "intend to perform the underlying prohibited action"); <u>United States v. Vasarajs</u>, 908 F.2d 443, 447 n.7 (9th Cir. 1990) ("a general intent requirement" requires one to act "intentionally, as opposed to accidentally"). Accordingly, <u>Leocal</u> is entirely

1  consistent with the conclusion that a general intent crime can

2  amount to a "crime of violence."

3      Nor does Fernandez-Ruiz limit crimes of violence to

4  specific intent crimes.  In fact, Fernandez-Ruiz expressly

5  recognized that general intent crimes can come within a "crime

6  of violence."

7      In discussing legislative history of the Comprehensive

8  Crime Control Act of 1984 (which gave rise to 18 U.S.C. § 16),

9  the majority noted that a Senate report attached to the bill

10 cited "battery" at 18 U.S.C. § 113(d) (1976) as an example of

11 a crime of violence within the meaning of 18 U.S.C. § 16(a).

12 Fernandez-Ruiz, 466 F.3d at 1131 n.11 (citing Sen. Rep. No.

13 98-225, at 307 & n.12 (1983)). In finding that this reference

14 did not support the dissent's contention that recklessness was

15 a sufficient *mens rea* for a "crime of violence," the majority

16 expressly distinguished 18 U.S.C. § 113(d) as a general intent

17 crime, and equated the general intent required by the statute

18 with the kind of "intentional" conduct required for a "crime

19 of violence":

20     Yet, at least at the time of § 16's enactment, §
       113(d) was a "general intent" crime. See United
21     States v. Knife, 592 F.2d 472, 481-82 & n.12 (8th
       Cir. 1979) ("The element of intent in § 113(f)" -
22     defined as an assault under § 113(d) that results in
       serious bodily injury - "is satisfied if the general
23     intent to commit the acts of assault arose when
       [defendant] initially approached [the victim].");
24     United States v. Martin, 536 F.2d 535, 535-36 (2d
       Cir. 1976) (per curiam) (finding the mental element
25     of § 113(d) to be adequately proven where "the
       magistrate found an intent to strike and to
26     scuffle"). Both these cases involve facts showing an
       intent to strike the victim, not merely the creation
27     of such risk. We therefore doubt that "general
       intent" under § 113(d) includes reckless conduct, and
28     find the dissent's argument from legislative history
       unconvincing.

19                                                    07CR2872-JM

1  <u>Fernandez-Ruiz</u>, 466 F.3d at 1131 n.11. As such, contrary to

2  Defendant's suggestion, <u>Fernandez-Ruiz</u> actually supports a

3  finding that a general intent crime can satisfy the

4  categorical definition of a "crime of violence."

5  **B.    DEFENDANT'S DEPORTATION WAS VALID**

6       Defendant's entire motion is premised upon his contention

7  that his removal order was fundamentally unfair. [Mot. At 3.]

8  Defendant  argues  that  the  immigration  judge  erroneously

9  determined that his prior conviction was an aggravated felony,

10 and therefore, erroneously advised him that he is ineligible for

11 discretionary  relief.    As  discussed  above,  Defendant's

12 conviction  for  assault  with  a  firearm  on  a  person  is  a

13 categorical crime of violence.   Thus, the immigration judge

14 properly advised Defendant that he was ineligible for relief

15 from deportation and the resulting order of deportation is

16 valid.  Defendant's motion to invalidate his deportation should

17 be dismissed.

18                              **IV**

19                          <u>**CONCLUSION**</u>

20     For  the  foregoing  reasons,  the  Government  respectfully

21 requests that Defendant's motion be denied.

22     DATED: January 18, 2008.

23

24                              Respectfully Submitted,

25                              KAREN P. HEWITT
                                United States Attorney
26

27                              /s/ ***Nicole Acton Jones***

28                              NICOLE ACTON JONES
                                Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 07CR2872-JM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUAN HERON-SALINAS, | ) | CERTIFICATE OF SERVICE |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

IT IS HEREBY CERTIFIED THAT:

     I, NICOLE ACTON JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action. I have caused service of **GOVERNMENT'S RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     1. Jennifer Coon, Federal Defenders of San Diego, Inc.

     I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

     None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

     I declare under penalty of perjury that the foregoing is true and correct.

     Executed on January 18, 2008.

                          /s/ *Nicole Acton Jones*
                          NICOLE ACTON JONES
                          Assistant U.S. Attorney